**In re Robert Morgan GRIFFITH, Jr., Debtor.**

**William L. LANCASTER, III, Trustee, Plaintiff,**

v.

**UNITED AMERICAN BANK, Defendant.**

Bankruptcy No. 3–81–00420.
Adv. No. 3–81–0396.

United States Bankruptcy Court,
E. D. Tennessee.

Feb. 16, 1982.

3. Except transfers to "insiders." 11 U.S.C. § 547(b)(4)(B).

Paul J. Sherwood, Johnson City, Tenn., for plaintiff.

Don W. Cooper, Bristol, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

This is an action by the trustee in bankruptcy to avoid an alleged preference to a bank. 11 U.S.C. § 547. Trial was held September 18, 1981. The facts generally are not disputed.

### I

On December 19, 1979, the debtor, Robert Morgan Griffith, Jr. (Griffith), executed an unsecured installment note to the United American Bank, Johnson City, Tennessee (UAB), Note No. 3008339904, for $5,850.00. Ex. 1. On November 23, 1980, Griffith executed another unsecured note to UAB, Note No. 05208, for $16,836.64. Ex. 2.

In February 1981, Griffith, a builder, also had two or more secured construction loans with UAB. On February 3rd a bank official, either Mr. Bob Garnett or Mr. Charles Hurt, asked Griffith to come by the Bank. Griffith did as requested and was told that the two unsecured notes were delinquent. UAB thereupon wrote two checks payable to Griffith in the amounts of $16,661.09 and $3,297.80, charging these amounts as draws against two of Griffith's construction loans—Lots 3 and 30 in the Whisperwood Addition. These checks were deposited to Griffith's checking account.[1] Griffith was then requested to draw two checks on his account payable to UAB in the amounts of $16,661.09 and $3,297.80. Griffith complied and UAB immediately credited these checks to Griffith's two unsecured loans, which paid those loans in full. UAB knew at that time that Griffith was in financial difficulty and that materialmen's liens had been filed against jobs that Griffith had under construction, including the properties

against which UAB charged the February 3rd draws.

On March 12, 1981, Griffith filed a voluntary petition in bankruptcy. 11 U.S.C. § 301.

### II

11 U.S.C. § 547(b), with exceptions not pertinent, enacts that the trustee may avoid any transfer of property of the debtor—

"(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

. . . . .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

. . . . .

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

It will be noted that the undisputed facts set forth herein do not come within an ordinary preference action. The net effect of the transactions, however, in which Griffith acted only as directed by UAB, enabled UAB to obtain full payment of two unsecured loans. The fact that innocent parties could have been seriously harmed by UAB charging draws against wholly unrelated

---

1. Mr. Hurt testified that a "hold" was placed on Griffith's checking account. The records introduced do not support that testimony. See Exs. 4, 5, 6.

construction loans, knowing that those draws were not to be used to pay material-men with outstanding debts but to satisfy UAB's unsecured loans, does not appear to have bothered UAB in the least.[2]

UAB deposited the funds to Griffith's account. At that time the funds became the property of Griffith. UAB argues that there was no real transfer of funds. This is incorrect. There was a deposit to Griffith's account. See Ex. 5. UAB also argues that the advances to Griffith on February 3rd on the construction jobs were, in effect, unsecured advances by virtue of the value of the property. This fact, if true, is immaterial. Nor was there any proof introduced as to the value of the properties. When the funds were deposited to Griffith's account, he became the owner of those funds and could do as he pleased with them, UAB's attempted "hold" notwithstanding. The transfer to UAB was effected by checks drawn on Griffith's account.

Payment of the two unsecured loans to UAB on February 3, 1981, in the amount of $19,958.89, constitutes an impermissible preferential transfer, 11 U.S.C. § 547(b), that should be avoided. The trustee is entitled to recover this sum. 11 U.S.C. § 550(a)(1). Judgment will be entered accordingly.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

---

2. UAB apparently overlooks the fact that serious consequences can follow the misapplication of contract payments by an owner, con-tractor, subcontractor, *or other person.* See T.C.A. § 64-1139, 1140, 1142.